UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| THE SAGINAW CHIPPEWA INDIAN TRIBE OF MICHIGAN, <br><br> Plaintiff, <br><br> v. <br><br> MARK G. PEARCE, Chairman, KENT Y. HIROZAWA, PHILIP A. MISCIMARRA, HARRY I. JOHNSON III, and LAUREN MCFERRAN in their official capacities as Members of the Board, and TERRY A. MORGAN in her official capacity as Regional Director of Region 7, <br><br> Defendants. | Case No. 1:15-cv-12077 <br><br> Honorable Thomas L. Ludington |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTIONS FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**CONCISE STATEMENT OF ISSUES PRESENTED**

(1) Whether this Court has subject-matter jurisdiction to enjoin a representation proceeding pending before the National Labor Relations Board

(2) Whether the Plaintiff has satisfied its substantial burden to show that it is entitled to a temporary restraining order or a preliminary injunction

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

<u>Supreme Court Cases</u>

- *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41 (1938)

- *Leedom v. Kyne*, 358 U.S. 184 (1958)

<u>Court of Appeals Cases</u>

- *Blue Cross & Blue Shield of Mich. v. NLRB*, 609 F.2d 240 (6th Cir. 1979)

- *Detroit Newspaper Agency v. NLRB*, 286 F.3d 391 (6th Cir. 2002)

- *NLRB v. Little River Band of Ottawa Indians*, --- F.3d ----, 2015 WL 3556005, at *12 (6th Cir. June 9, 2015)

- *Hartz Mountain Corp. v. Dotson*, 727 F.2d 1308 (D.C. Cir. 1984)

<u>District Court Cases</u>

- *Saginaw Chippewa Indian Tribe of Michigan v. NLRB*, 838 F. Supp. 2d 598 (E.D. Mich. 2011)

- *Little River Band of Ottawa Indians v. NLRB*, 747 F. Supp. 2d 872 (W.D. Mich. 2010)

<u>Statutory Provisions of the National Labor Relations Act</u>

- 29 U.S.C. §§ 159(d), 160(e), (f)

Defendants, the Chairman and four Members of the National Labor Relations Board and Regional Director Terry A. Morgan (collectively, "NLRB" or "the Agency"), oppose the Saginaw Chippewa Indian Tribe of Michigan's ("the Tribe's") *Emergency Motion for Temporary Restraining Order* [Dkt. #8] and *Emergency Motion for Preliminary Injunction* [Dkt. #3] ("PI Mem.").[1] The Tribe has not shown that the Court has subject-matter jurisdiction to enjoin a pending NLRB proceeding or "that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 374 (2008). Therefore, the Tribe has not met its "substantial" burden of demonstrating entitlement to either a temporary restraining order or a preliminary injunction. *Koole v. Wells Fargo Bank, NA*, No. 14-13976, 2015 WL 3408944, at *1 (E.D. Mich. May 27, 2015).

## INTRODUCTION

In 2011, the Tribe filed a lawsuit in this Court seeking to enjoin an unfair labor practice proceeding before the NLRB in which the Tribe, as proprietor of the Soaring Eagle Casino and Resort ("Casino"), was accused of violating the National Labor Relations Act ("NLRA"). The Tribe claimed that the NLRA did not apply to its operation of the Casino and that merely litigating its jurisdictional position before the Board would irreparably injure the Tribe's sovereignty. But this Court denied the Tribe's request for injunctive relief and granted the NLRB's motion to dismiss on the basis of long-settled precedent confirming that district courts generally lack jurisdiction to enjoin such proceedings. *Saginaw Chippewa Indian Tribe of Mich. v. NLRB*, 838 F. Supp. 2d 598, 603-06 (E.D. Mich. 2011).

_____

[1] In accordance with this Court's Stipulated Order Establishing Briefing Schedule [Dkt. #15], the NLRB files a single brief in opposition to both motions.

Now, less than four years later, the Tribe has filed another lawsuit seeking to enjoin a different NLRB proceeding. In this instance, the Tribe seeks to prevent the NLRB from conducting a scheduled hearing in a representation case – that is, a case in which a union has filed a petition with the Agency seeking certification as exclusive collective bargaining representative of certain employees through an NLRB-conducted secret ballot election. *See* 29 U.S.C. § 159. The Tribe claims that this Court's prior decision denying injunctive relief in the 2011 case does not control here because a representation case is different than an unfair labor practice case.

The Tribe is wrong. Just as a district court lacks jurisdiction to enjoin an unfair labor practice case, a district court similarly lacks jurisdiction to enjoin a representation case. *See, e.g.*, *Blue Cross & Blue Shield of Mich. v. NLRB*, 609 F.2d 240 (6th Cir. 1979). In addition, the Tribe does not satisfy the "nearly insurmountable" exception recognized in *Leedom v. Kyne*, 358 U.S. 184 (1958), holding that district courts have jurisdiction to strike down Board action if it clearly violates the NLRA and would otherwise evade review. *U.S. Dep't of Justice v. FLRA*, 981 F.2d 1339, 1343 (D.C. Cir 1993). This fatal jurisdictional defect aside, the Tribe's primary merits argument has recently been foreclosed by an intervening Sixth Circuit decision: The Tribe urges the Court to find that "limited" injunctive relief is warranted because the Sixth Circuit *might* soon adopt its view that the NLRA can never apply to an Indian tribe's operation of a casino on its lands. But shortly after the filing of the Tribe's motions, the Sixth Circuit held otherwise, adopting "the *Coeur d'Alene* framework," which the Tribe sharply criticizes here, as controlling circuit law with respect to NLRB jurisdiction. *NLRB v. Little River Band of Ottawa Indians*, --- F.3d ----, 2015 WL 3556005, at *12 (6th Cir. June 9, 2015).

2

Because of this, the Tribe cannot show that it has "a strong likelihood of success on the merits." *Ohio State Conference of NAACP v. Husted*, 768 F.3d 524, 533 (6th Cir. 2014). Moreover, since the Tribe's sole alleged injury in the absence of injunctive relief consists of the costs and burdens of litigation, the Tribe has not shown that it "would suffer irreparable injury without the injunction." *Id.* Finally, injunctive relief would cause substantial harm to the NLRB, the union that filed the representation petition at issue herein, and the Casino employees whose collective bargaining rights are implicated by that petition. *See Boire v. Greyhound Corp.*, 376 U.S. 473, 477-79 (1964) (recognizing Congress's concern that unless the Board can promptly hold an election to determine employees' choice of representation, the union runs the risk of impairment of strength by attrition and delay while the case is dragging on). Accordingly, the Tribe does not qualify for the emergency injunctive relief which it seeks.[2]

## FACTUAL BACKGROUND

During the past decade, several matters involving the Tribe have been brought before the NLRB by outside parties who have filed either unfair labor practice charges or representation petitions with the Agency.[3] Only two such matters are directly relevant here.

---

[2] The Tribe's arguments for emergency injunctive relief focus almost exclusively on the allegations contained in Count I of the Tribe's Complaint, which contests the general applicability of the NLRA to the Tribe's operation of the Casino. (*See* Compl. ¶¶ 117-129.) The counts of the Complaint challenging the Board's new election rules (*see id.* ¶¶ 156-191) are not pressed in the Tribe's motions – and with good reason: A court recently ruled that an employer did not show that it would suffer irreparable harm from implementation of the new rules in a pending case. *See Baker DC v. NLRB*, --- F. Supp. 3d ----, 2015 WL 1941516, at *1 (D.D.C. Apr. 22, 2015); *see also Associated Builders & Contractors of Tex., Inc. v. NLRB*, No. 1-15-CV-026, 2015 WL 3609116 (W.D. Tex. June 1, 2015) (rejecting on the merits many of the same arguments challenging the new election rules made by the Tribe in its Complaint).

[3] The Tribe's assertion that the NLRB has "commenced . . . action[s] against the Tribe" (PI Mem. at i), gives the impression that the Agency acts as a roving commission that, on its own initiative, commands employers to comply with the NLRA. To the contrary, by statute, the NLRB "address[es] unfair labor practice charges and conduct[s] representation elections [only]

3

### 1. The 2011 Unfair Labor Practice Case Initiated by the United Automobile Workers

In September 2011, upon a charge filed by the United Automobile Workers, Regional Director Morgan's predecessor issued an unfair labor practice complaint accusing the Tribe of committing several violations of the NLRA. The issuance of the unfair labor practice complaint over the Tribe's jurisdictional objections prompted the Tribe to file the unsuccessful injunction lawsuit described above, resulting in a two-month delay in the processing of the case. When the unfair labor practice case resumed, the Tribe's defense was that the NLRA did not apply to Indian tribes. It "did not refute the testimony and other evidence regarding the merits of the unfair labor practice charges." *Soaring Eagle Casino & Resort*, 359 NLRB No. 92, at *13 (Apr. 16, 2013).

Ultimately, the unfair labor practice proceedings culminated with an April 16, 2013 Decision and Order in which the Board employed the three-part jurisdictional standard articulated in *Donovan v. Coeur d'Alene Tribal Farm*, 751 F.2d 1113 (9th Cir. 1985), as well as the Board's own discretionary jurisdictional test, and found that the NLRA applied to the Tribe's operation of the Casino. *Id.* at *9-*13. The Board therefore ordered the Tribe to remedy its unfair labor practices. *Id.* at *1-*2. The Tribe petitioned for review in the Sixth Circuit, and the Board cross-petitioned for enforcement. *See* 29 U.S.C. § 160(e)-(f). In its brief, the Tribe reiterated its jurisdictional objection to the Board's proceeding. In addition, the Tribe challenged the Board's authority to issue the order under review. Specifically, the Tribe questioned the validity under the Constitution of the President's January 2012 recess appointments of two of the three Board members who decided its case. *See* Brief of Petitioner/Cross-Respondent Saginaw Chippewa

---

upon request." *Chamber of Commerce of the U.S. v. NLRB*, 721 F.3d 152, 154 (4th Cir. 2013); *see* 29 U.S.C § 159(c)(1) and 160(b).

Indian Tribe of Michigan at 15-16, *Saginaw Chippewa Indian Tribe of Michigan v. NLRB* (6th Cir.) (Nos. 13-1569 & 13-1629). (*See* PI Mem. Ex. A at 15-16.)

Oral argument in the Sixth Circuit case was scheduled for June 26, 2014. But on that very morning, the Supreme Court decided *NLRB v. Noel Canning*, 134 S. Ct. 2550 (2014), which held that the President's January 2012 recess appointments to the Board—including the two members who participated in the adjudication of the Tribe's case—were not authorized by the Constitution. Since the Tribe had raised the recess appointments argument in its brief, oral argument did not occur as planned. Instead, upon motion of the Board, the Sixth Circuit vacated the Board's April 16, 2013 Order and remanded the case to the Board for further consideration in light of *Noel Canning*. On remand, a new Board panel consisting of three presidentially appointed and Senate-confirmed members considered the case de novo and adopted the April 26, 2013 Decision and Order with minor modifications. *Soaring Eagle Casino & Resort*, 361 NLRB No. 73, at *1 (Oct. 27, 2014).

The Tribe then filed a new petition for review and the Board filed a new cross-petition for enforcement. The Sixth Circuit adopted the parties' previously-submitted briefs and held oral argument on April 29, 2015. The case has not yet been decided.

In the meantime, a different panel of the Sixth Circuit has issued its decision in *Little River Band of Ottawa Indians v. NLRB*, --- F.3d ----, 2015 WL 3556005 (6th Cir. June 9, 2015). Like the Saginaw Tribe, the Little River Band contested the Board's exercise of jurisdiction over its casino. *Id.* at *2 (noting that "[t]he only argument the Band presented in its defense was that the Board lacked jurisdiction"). Over the dissent of Judge McKeague, the Sixth Circuit "adopt[ed] the [Ninth Circuit's] *Coeur d'Alene* framework to resolve" the applicability of the Act to Indian tribes, *id.* at *12, and concluded that "the NLRA applies to the Band's operation of

[its] . . . casino," *id.* at *1. Therefore, the Court of Appeals enforced the Board's order requiring the Little River Band to remedy its unfair labor practices. *Id.* at *16.

### 2.   The 2015 Representation Case Initiated by the United Steelworkers

On May 12, 2015, the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union (the Union) filed a representation petition with the NLRB seeking to represent certain of the Tribe's employees who work at the Casino. The filing of the petition, which has been docketed as Case 07-RC-152046, triggered the initiation of NLRB procedures to process it. Accordingly, on May 12, 2015, Regional Director Morgan served a letter upon counsel for the Tribe informing counsel of the Tribe's obligations under the NLRA. (*See* attached NLRB Ex. A.) She also enclosed a copy of the petition. The letter further notified counsel for the Tribe that, in accordance with the Board's rules, a hearing on the petition was set to be conducted at 10:00 AM on May 20, 2015, in Grand Rapids, Michigan. *Id; see* 29 C.F.R. § 102.63(a)(1) (requiring regional directors to "set the hearing for a date 8 days from the date of service of the notice").

On May 16, 2015, counsel for the Tribe sent an email to Nancy Platt, Deputy Assistant General Counsel of the NLRB's Contempt, Compliance, and Special Litigation Branch. (*See* attached NLRB Ex. B.) In the email, counsel for the Tribe indicated that the Tribe had "deep concerns" over its ability to adequately prepare for the May 20th hearing and was "poised to file a TRO in federal court." As a result of ensuing discussions, the General Counsel of the Tribe sent a letter to the Region on May 18, 2015, formally requesting that the hearing be postponed pending the outcome of the Sixth Circuit's review of the Board's Decision and Order in the 2011 unfair labor practice case. Alternatively, the Tribe stated that it "c[ould] be prepared to move forward with this [representation] case on or after June 15." (Compl. Ex. N.) Although Regional

6

Director Morgan refused to stay the proceedings indefinitely, she granted the Tribe's alternative request to postpone the hearing until June 15th. (*See* NLRB Ex. C.)

On June 8, 2015, exactly one week before the rescheduled hearing was set to occur, the Tribe filed a complaint with this Court and requested emergency injunctive relief to prevent the representation hearing from taking place. Because the Tribe's late filings left little time for the NLRB to prepare a response or for the Court to carefully consider the issues, the parties agreed that Regional Director Morgan would further postpone the hearing until July 21, 2015. Regional Director Morgan issued such an order on June 10, 2015. (*See* NLRB Ex. D.)

## ARGUMENT

When courts consider a motion for either a preliminary injunction or a temporary restraining order, they must determine whether they have subject-matter jurisdiction to grant the requested relief and balance the following four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *Ohio State Conference of NAACP*, 768 F.3d at 532-33 (quoting *City of Pontiac Retired Employees Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014)). In *Nken v. Holder*, the Supreme Court explained that when the government is the opposing party, the third and fourth factors merge. 556 U.S. 418, 435 (2009). As discussed below, well-established precedent establishes that this Court lacks subject matter jurisdiction to enjoin a pending representation case, and for this reason, together with other relevant considerations, none of the three equitable factors favors the entry of preliminary injunctive relief.

7

I.   **The Tribe has no likelihood of success on the merits because well-established legal precedent deprives this court of subject-matter jurisdiction and because the Sixth Circuit has largely undermined the Tribe's primary merits argument.**

The Tribe has no likelihood of prevailing on the merits because district courts generally lack subject-matter jurisdiction to review NLRB representation proceedings.[4] There is no jurisdictional basis for district courts to review the exercise of authority by the Board and its agents in representation cases. Congress made the deliberate decision to allow judicial review of representation case rulings *only* by an appropriate court of appeals and *only* if a subsequent unfair labor practice proceeding results in a final Board order. *See Mayer v. Ordman*, 391 F.2d 889, 891 (6th Cir. 1968) (per curiam) ("The cases are clear that Congress has provided an administrative tribunal, the National Labor Relations Board, to administer the Labor Acts and that, other than final orders from the NLRB, which are appealable to the United States Courts of Appeals, the power of the Board in disputes between labor and management is exclusive.").

A.   **District courts generally lack jurisdiction to review representation cases.**

On its face, the NLRA indicates a purpose to limit judicial review of representation decisions. Section 10(e) and (f) provides for review, in the appropriate Court of Appeals, of "a final order of the Board" entered in an unfair labor practice proceeding under section 10. 29 U.S.C. § 160(e), (f). In *American Federation of Labor v. NLRB*, 308 U.S. 401, 409-11 (1940), the Supreme Court held that a certification, which typically terminates a representation case after an election has been held, does not constitute a "final order of the Board" within the meaning of section 10(e) and (f). Therefore, "as a general rule, Board orders emanating from representation

---

[4] When a defendant argues that the court lacks subject-matter jurisdiction, the plaintiff has the burden of proving jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Vander Boegh v. EnergySolutions, Inc.*, 772 F.3d 1056, 1064 (6th Cir. 2014).

proceedings are not directly reviewable in court." *Hartz Mountain Corp. v. Dotson*, 727 F.2d 1308, 1310 (D.C. Cir. 1984).

Instead, the NLRA provides an indirect method for judicial review of Section 9 representation proceedings. Specifically, Section 9(d) provides that when a certification has become the basis for a subsequent unfair labor practice order and that order is before an appropriate Court of Appeals under section 10(e) or (f), the certification itself is also open to review. 29 U.S.C. § 159(d); *see Canadian Am. Oil Co. v. NLRB*, 82 F.3d 469, 471 n.1 (D.C. Cir. 1996) ("Although a Board's decision in a certification proceeding is not directly reviewable in the courts, an employer may challenge a certification decision indirectly by refusing to bargain with the union and then raising its election objection in the ensuing unfair labor practice proceedings."). "Congress adopted this policy because it wished to avoid delays involved in direct judicial review—delays which ultimately could frustrate employees' bargaining rights before the employees had an opportunity to exercise them." *Gold Coast Rest. Corp. v. NLRB*, 995 F.2d 257, 267 (D.C. Cir. 1993).[5] The indirect review process chosen by Congress protects this important interest and still "makes full provision for judicial review of the underlying certification order." *Boire*, 376 U.S. at 477.

---

[5] The Sixth Circuit recognized in *Blue Cross & Blue Shield* that the legislative history of the NLRA is particularly emphatic on this point. As the relevant House Report states, "Section 9(d) of the bill makes clear that there is to be no court review prior to the holding of the election." 609 F.2d at 244 (quoting *Boire*, 376 U.S. at 478 n.5). Similarly, the relevant Senate Report states, "Section 9(d) makes it absolutely clear that there shall be no right to court review anterior to the holding of an election. An election is the mere determination of a preliminary fact, and in itself has no substantial effect upon the rights of either employers or employees." *Id.* (quoting *Boire*, 376 U.S. at 478 n.6).

**B.  The jurisdictional exception carved out in *Leedom v. Kyne* is extremely limited.**

The cases following the principle of *American Federation of Labor* over the last seventy years "are legion." *Hartz Mountain*, 727 F.2d at 1310. Nevertheless, "the Supreme Court has established one important and extremely narrow exception to the general rule that Board representation orders are not subject to direct judicial review." *Id.* at 1311. In *Leedom v. Kyne*, 358 U.S. 184, 187 (1958), the Supreme Court held that district courts may exercise jurisdiction under 28 U.S.C. § 1337 "to strike down an order of the Board made in excess of its delegated powers and contrary to a specific prohibition in the Act," 358 U.S. at 188, but only "'[i]f the absence of jurisdiction of the federal courts [would] mean[] a sacrifice or obliteration of a right which Congress has created,'" *id.* at 190 (quoting *Switchmen's Union v. Nat'l Mediation Bd.*, 320 U.S. 297, 300 (1943)). "Thus, in order to justify the exercise of [*Kyne*] jurisdiction, a plaintiff must show, first, that the agency has acted 'in excess of its delegated powers and contrary to a specific prohibition' which 'is clear and mandatory,' and, second, that barring review by the district court 'would wholly deprive [the party] of a meaningful and adequate means of vindicating its statutory rights.'" *Nat'l Air Traffic Controllers Ass'n v. Fed. Serv. Impasses Panel*, 437 F.3d 1256, 1263 (D.C. Cir. 2006) (second alteration in original) (citation omitted).

"The federal courts have consistently recognized the limits imposed by the *Kyne* decision." *Physicians Nat'l House Staff Ass'n v. Fanning*, 642 F.2d 492, 496 (D.C. Cir. 1980) (en banc); *see also id.* at 503 (dissenting opinion) ("This circuit, like the other lower courts, has been frugal in recognizing the *Kyne* exception."). The D.C. Circuit, where many cases invoking *Kyne* are filed, has repeatedly emphasized how difficult it is for plaintiffs to establish jurisdiction under its auspices. Indeed, "[t]he limits of *Kyne* jurisdiction have been described as 'nearly

10

insurmountable' by the District of Columbia Circuit." *Int'l Union of Operating Eng'rs, Local 70 v. NLRB*, 940 F. Supp. 1439, 1442 n.3 (D. Minn. 1996) (quoting *U.S. Dep't of Justice v. FLRA*, 981 F.2d 1339, 1343 (D.C. Cir 1993)). "In *Physicians*, [the Court of Appeals] made it unmistakably clear that the *Kyne* exception is extraordinarily narrow." *Hartz Mountain*, 727 F.2d at 1312. Accordingly, only "in the rarest of circumstances" will *Kyne* support district court jurisdiction. *Id.* at 1311.

### C. *Leedom v. Kyne* does not support district court jurisdiction in this case.

The Tribe has not shown that its suit involves the "rarest of circumstances" necessary to establish jurisdiction under *Kyne*. Indeed, the Tribe cannot satisfy either of *Kyne*'s two conjunctive requirements. Therefore, this Court lacks jurisdiction to grant the Tribe's request for preliminary injunctive relief.

#### 1. Jurisdiction is not available under *Leedom v. Kyne* because the Tribe has a meaningful and adequate opportunity for judicial review.

The Tribe may obtain judicial review of the jurisdictional arguments it makes here by following the procedure prescribed by the NLRA. As the Supreme Court explained in *Board of Governors of the Federal Reserve System v. MCorp Financial, Inc.*, 502 U.S. 32, 43 (1991), there can be no "sacrifice or obliteration" of a right under *Kyne* where "a meaningful and adequate opportunity for judicial review" is available. *See Detroit Newspaper Agency v. NLRB*, 286 F.3d 391, 398 (6th Cir. 2002) (noting that the Supreme Court "rested its decision in *MCorp* solely on the basis that MCorp had available to it review in the appellate courts, thus making district court jurisdiction improper under *Leedom* [*v. Kyne*]"); *see also Nat'l Air Traffic Controllers Ass'n*, 437 F.3d at 1263.

Sections 9(d) and 10(e) and (f) of the Act which, together, establish the indirect review procedure in representation cases, provide the Tribe with "a meaningful and adequate

11

opportunity for judicial review." *MCorp*, 502 U.S. at 43. Case 07-RC-152046 is currently scheduled for hearing on July 21, 2015. If, after the hearing, Regional Director Morgan directs an election, and if the employees at the Casino decide against union representation, the Union will not be certified and the Tribe will not suffer any harm. On the other hand, if the employees at the Casino opt for union representation and the Union is certified as their representative, the Tribe can simply refuse to bargain with the Union. An employer's post-certification refusal to bargain will either force the union to file an unfair labor practice charge, or, in the absence of a charge, permit the employer to ignore the results of the election. *See Hartz Mountain,* 727 F.2d at 1311 ("'Congress declared that the person aggrieved by a Board representation decision is obliged to precipitate an unfair labor practice proceeding as a means of securing review in the appellate courts.'") (quoting Robert A. Gorman, Basic Text on Labor Law: Unionization and Collective Bargaining 60 (1976)). "In *Kyne*, by contrast, the plaintiff in the district court was a labor organization. As a labor organization, it did not have the option, available to an employer, to seek indirect judicial review of the Board's action." *Goethe House N.Y., German Cultural Ctr. v. NLRB,* 869 F.2d at 75, 80 (2d Cir. 1989). This is because, as a practical matter, few employers will file a refusal-to-bargain charge against a union. *See Miami Newspaper Printing Pressmen's Union Local 46 v. McCulloch,* 322 F.2d 993, 997 n. 7 (D.C.Cir.1963). In addition, a union risks losing employee support if it refuses to bargain, especially in the initial period after certification.

In light of all this, the D.C. Circuit has explained that "the *Leedom v. Kyne* remedy was not devised for the benefit of an employer." *Id.* (citing *Atlas Life Ins. Co. v. Leedom,* 284 F.2d 231 (D.C. Cir. 1960)). "Indeed, the District of Columbia Circuit has opined that had the aggrieved party in *Kyne* been an employer and thus able to seek indirect judicial review, the Supreme Court probably would have held that the district court lacked jurisdiction over the

12

case." *Goethe House*, 869 F.2d at 80 (citing *Hartz Mountain*, 727 F.2d at 1312 n.2).

Accordingly, courts within and outside the Sixth Circuit have repeatedly and consistently

dismissed lawsuits like this one in which an employer seeks premature judicial review of an

NLRB representation case. *See, e.g.*, *id.*; *Blue Cross & Blue Shield*, 609 F.2d at 245 & n.4; *Bd. of*

*Trustees of Mem'l Hosp. of Fremont County, Wyo. v. NLRB*, 523 F.2d 845, 846 (10th Cir. 1975)

(reversing a district court that had erroneously enjoined a representation election "on the ground

that the employer was exempt from coverage by the National Labor Relations Act"); *McCulloch*

*v. Libbey-Owens-Ford Glass Co.*, 403 F.2d 916, 917-18 (D.C. Cir. 1968).

The fact that the Tribe has raised an argument with constitutional overtones (PI Mem. at

24; Compl. ¶¶ 120, 123) does not diminish the availability of meaningful and adequate judicial

review. In *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1 (1937), the Supreme Court

examined the various provisions of the NLRA, including the ones supplying judicial review. The

Court concluded: "Upon that review all questions of the *jurisdiction of the Board* and the

regularity of its proceedings, all questions of *constitutional right* or statutory authority are open

to examination by the court." *Id.* at 47 (emphasis added). Indeed, the Court relied on this

conclusion the very next year in rejecting an employer's impermissible attempt to seek district

court review of its constitutional argument before an NLRB administrative hearing had

commenced. *See Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 49-50 (1938). Other

courts have likewise refused to exempt constitutional arguments from the NLRA's prescribed

review procedure, which is fully capable of resolving such matters. This is so even when

plaintiffs claim that the NLRB proceeding itself violates the Constitution. *See, e.g.*, *AMERCO v.*

*NLRB*, 458 F.3d 883, 887-88 (9th Cir. 2006); *Blue Cross & Blue Shield*, 609 F.2d at 244-45; *J.P.*

13

*Stevens Employees Educ. Comm. v. NLRB*, 582 F.2d 326, 329 (4th Cir. 1978); *Bokat v. Tidewater Equip. Co.*, 363 F.2d 667, 672-73 (5th Cir. 1966).[6]

Citing its experience in prior representation cases, the Tribe challenges the adequacy of the NLRA's indirect review procedure. In particular, the Tribe complains that because no union has ever prevailed in an election conducted by the Board among its employees, the Tribe has not yet had a chance to follow the indirect review procedure established by Sections 9(d) and 10(e) and (f). This may be so, but it is immaterial. If the Union prevails in the 2015 representation case, the Tribe—as the employer—will undoubtedly have means within its control to secure judicial review. Moreover, as the Tribe itself repeatedly emphasizes, the Sixth Circuit is currently reviewing the applicability of the NLRA to the Tribe in a pending unfair labor practice case. Thus, regardless of whether the Union is certified in the representation case, the Tribe cannot sensibly complain that its jurisdictional arguments will evade judicial review.

In short, the Tribe has a meaningful and fully adequate opportunity for judicial review. The Act, as authoritatively interpreted by over seventy years of precedent, provides a way forward. The Tribe cannot create its own nonstatutory path to that destination. On this basis alone, *Kyne* jurisdiction does not lie.

**2. Jurisdiction is not available under *Leedom v. Kyne* because the Tribe has not shown that the NLRB has violated a clear statutory command.**

Not only has the Tribe failed to show that it has no meaningful and adequate opportunity to vindicate its rights, it has also not shown that the Board has violated a clear and mandatory

---

[6] The very cases that the Tribe relies upon exemplify these points. For instance, in *Kindred Nursing Centers East, LLC v. NLRB,* 727 F.3d 552 (6th Cir. 2013), the employer did not challenge the Board's election rulings by filing a district court lawsuit, like the Tribe has done here. Instead, the employer followed the statutory procedure and refused to bargain with the certified union, thus permitting the employer to obtain judicial review of its election objections at the conclusion of the ensuing unfair labor practice case. *Id.* at 559.

provision of the NLRA. In *Hartz Mountain*, where an employer relied on *Kyne* in an unsuccessful attempt to establish district court jurisdiction, the D.C. Circuit emphasized—literally, using italics—that "*any colorable support for the Board's ruling should be treated as a jurisdictional defect dictating dismissal*.'" 727 F.2d at 1313 (quoting Gorman, supra, at 64-65). This standard prevents district courts from exercising jurisdiction over an NLRB action or order if the Agency can muster any nonfrivolous defense in support.

Here, the Board's reasons for proceeding in the face of the Tribe's jurisdictional objections easily pass this test. As this Court has previously observed, the term "'Indian tribe' is not among the entities expressly 'exempted with careful particularity" from the NLRA's definition of "employer." *Saginaw Chippewa Indian Tribe of Mich.*, 838 F. Supp. 2d at 602 (quoting *Little River Band of Ottawa Indians v. NLRB*, 747 F. Supp. 2d 872, 885 (W.D. Mich. 2010)); *see* 29 U.S.C. § 152(2). Further, as this Court has additionally noted, "it is not obvious that the canons [of federal Indian law] . . . mandate a particular conclusion," on the jurisdictional question the Tribe raises. *Id.* at 607 n.1. The Board has previously applied a widely accepted legal test to evaluate its jurisdiction over tribal casinos, and those decisions have been enforced by courts of appeals. *See, e.g.*, *Little River Band of Ottawa Indians v. NLRB*, --- F.3d ----, 2015 WL 3556005 (6th Cir. June 9, 2015); *San Manuel Indian Bingo & Casino*, 475 F.3d 1306 (D.C. Cir. 2007). At a minimum, the Board is entitled to apply this test to the Saginaw Tribe in the pending representation case. Thus, there is more than "colorable support" for the NLRB's decision to continue processing the Union's representation petition here. *Hartz Mountain*, 727 F.2d at 1313 (emphasis removed).

Moreover, as previously noted, the Sixth Circuit just recently adopted the *Coeur d'Alene* framework used by the Board to evaluate whether the Act applies to tribal enterprises. *Little*

15

*River Band of Ottawa Indians v. NLRB*, 2015 WL 3556005, at *12. This development only
heightens the "colorable support" for the NLRB's actions. At the same time, it undercuts the
Tribe's supposition, on the sole basis of cherry-picked oral argument excerpts (PI Mem. at 5-7),
that the Sixth Circuit might rule in its favor on review of the Board's Decision and Order in the
2011 unfair labor practice case because the panel had "expressed skepticism with the Board's
request that the court follow . . . the Ninth Circuit's *Coeur d'Alene* analysis."[7]

### D.  The Tribe's arguments to avoid the NLRA's exhaustion requirement are unavailing.

The Tribe claims that it need not follow the NLRA's indirect review process here
because, unlike unfair labor practice cases decided pursuant to Section 10, "Section 9
representation cases don't have an express exhaustion requirement." (PI Mem. at 24.) The
Tribe's simplistic gloss on the statute lacks support. As demonstrated above, *see supra* Part I-A,
Section 9 representation cases are only reviewable when they are implicated by a subsequent
unfair labor practice finding under Section 10. Section 10 "make[s] exhaustion a jurisdictional
prerequisite." *Chevron Mining, Inc. v. NLRB*, 684 F.3d 1318, 1329 (D.C. Cir. 2012). Thus, by
channeling judicial review of Section 9 cases through the Section 10 procedure, Congress made
clear its intent to require exhaustion in representation cases, subject only to the *Kyne* exception
noted above, which the Tribe does not satisfy here.

---

[7] To be clear, this is not to suggest that the Saginaw Tribe will inevitably lose before the Sixth
Circuit in the Tribe's challenge to the Board's Decision and Order arising from the 2011 unfair
labor practice case. Unlike the Little River Band of Ottawa Indians, the Saginaw Tribe has relied
on specific treaty language to resist the application of the NLRA to its operation of the Casino.
*See Soaring Eagle Casino & Resort*, 359 NLRB No. 92, at *4-*5, *12-*13. The presence of
treaties is a relevant factor in the *Coeur d'Alene* framework. *See Little River Band of Ottawa
Indians*, 2015 WL 3556005, at *9. Of course, the Board reviewed those very treaties in the
underlying Decision and Order and determined that they do not preclude application of the Act
in this instance. *Soaring Eagle Casino & Resort*, 359 NLRB No. 92, at *12-*13. That conclusion
has, at the very least, "colorable support." *Hartz Mountain*, 727 F.2d at 1313 (emphasis
removed).

In any event, the Tribe's nonexhaustion argument fails on its own terms. Relying on a Sixth Circuit case discussing exceptions to *non-jurisdictional* exhaustion, the Tribe claims that this Court has jurisdiction to grant the relief it seeks because it can show "(1) that requiring exhaustion will result in irreparable harm; (2) that the administrative remedy is wholly inadequate; or (3) that the administrative body is biased." (PI Mem. at 22 (quoting *Kentucky v. United States ex rel. Hagel*, 759 F.3d 588, 599 (6th Cir. 2014)).

We have already addressed the second prong of the Tribe's argument, demonstrating that the Tribe has an adequate administrative remedy, *see supra* Part I-C-1. The third prong of the Tribe's argument warrants only a brief response because the only evidence of bias the Tribe sets forth is a series of unfavorable rulings from the Board and its delegatees. Such rulings "almost never constitute judicial bias." *Gale v. City of Tecumseh*, 156 Fed. Appx. 801, 809 (6th Cir. 2005); *see also Houston v. Logan*, 674 F.3d 613, 614 (6th Cir. 2012) ("Unfavorable rulings by a district court judge are almost never a sufficient basis upon which to infer bias . . . ."). Moreover, any allegation of systemic bias is undermined by the Tribe's own acknowledgement that the Board recently declined to assert jurisdiction over a different Indian tribe's operation of a casino on the basis of that tribe's particular treaty. (*See* PI Mem. at 22 & n.76 (mentioning the Board's decision in *Chickasaw Nation*, 362 NLRB No. 100 (June 4, 2015).).[8]

As discussed below, the remaining prong of the Tribe's argument is also without merit because requiring exhaustion will not result in irreparable harm.

---

[8] The Tribe's allegation of agency bias is also in tension with the Tribe's desire, as expressed its May 18th letter to the Region (*see* Compl. Ex. N), to gather and present new evidence in order to persuade the NLRB in the pending representation case that the NLRA does not apply to the Tribe's operation of the Casino.

**II. Supreme Court precedent holds that participation in an administrative proceeding before the NLRB does not constitute irreparable harm.**

As a matter of law, the Tribe is not harmed by participating in Board proceedings because the Board has no ability to require the Tribe to do anything without first obtaining circuit court enforcement of a final Board order in an unfair labor practice case. *See Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 48 (1938); *see also Detroit Newspaper Agency*, 286 F.3d at 400; *Little River Band of Ottawa Indians*, 747 F. Supp. 2d at 889.

The Tribe nonetheless argues that, in the absence of an injunction, the Tribe will suffer the irreparable injury of "litigat[ing] a single issue on two fronts – once before the Sixth Circuit, and once *again* before the Board." (PI Mem. at 14.) Specifically, the Tribe complains of the need to "present new evidence" and "make a record" in the pending representation case. (*Id.*) The Tribe claims that this injury is intensified because the Board is "a tribunal that lacks jurisdiction over the Tribe." (*Id.*) But the Supreme Court rejected a nearly identical argument over seventy-five years ago in *Myers*:

> Obviously, the rules requiring exhaustion of the administrative remedy cannot be circumvented by asserting that the charge on which the complaint rests is groundless and that the mere holding of the prescribed administrative hearing would result in irreparable damage. Lawsuits also often prove to have been groundless; but no way has been discovered of relieving a defendant from the necessity of trial to establish the fact.

*Id.* at 51-52. The Court thus recognized that the sufferance of various harms—whether real or imagined, quantifiable or abstract—is an unavoidable consequence of any adjudicatory process and does not generally warrant the issuance of injunctive relief by federal courts. *See also Grutka v. Barbour,* 549 F.2d 5, 9-10 (7th Cir. 1977) (vacating, for lack of jurisdiction, a district court injunction prohibiting the Board from proceeding in representation and unfair labor practice cases involving parochial schools operated by the Catholic Church); *Goethe House*, 869 F.2d at

75 (reversing district court injunction prohibiting the Board from conducting a representation election, even though the employer was substantially regulated by the German government).

The Tribe further complains that participation in the representation proceeding will "force[ it] to divert valuable government resources toward litigation . . . instead of toward governmental programs like police, fire, and education." It adds that this injury is "irreparable because the Tribe can never recover damages from the sovereign-immune Board." (PI Mem. at 15.) But "[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." *Renegotiation Board v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974).

Furthermore, the Tribe's argument closely parallels one made by employers and rejected by the D.C. Circuit in *Heller Brothers Co. v. Lind*, 86 F.2d 862 (D.C. Cir. 1936) (per curiam). In that case, various employers sought injunctions to prevent the NLRB from conducting hearings and adjudications on the basis that the NLRA was unconstitutional in whole or in part.[9] The employers argued that any activity undertaken by the purportedly unconstitutional Board would produce irreparable injury and that they had "no plain, adequate, or complete remedy at law." *Id.* at 863. The D.C. Circuit affirmed the district court's refusal to issue the requested injunctions. Without addressing the constitutionality of the Act, the court concluded that "the attendance of officers and employees at hearings, the employment of counsel, and like matters" were simply "annoying incidents" and were "not enough of themselves to establish a case for equitable relief." *Id.* The Court found it acceptable that any losses incurred by employers from participating in the Board's proceedings would "have to be borne without redress" if the NLRA

---

[9] At the time, three courts of appeals had previously concluded that the NLRA was unconstitutional as applied to certain employers. *See NLRB v. Friedman-Harry Marks Clothing Co.*, 85 F.2d 1 (2d Cir. 1936) (per curiam), *rev'd*, 301 U.S. 58 (1937); *Fruehauf Trailer Co. v. NLRB*, 85 F.2d 391 (6th Cir. 1936) (per curiam), *rev'd*, 301 U.S. 49 (1937); *NLRB v. Jones & Laughlin Steel Corp.*, 83 F.2d 998 (5th Cir. 1936) (per curiam), *rev'd*, 301 U.S. 1 (1937).

were subsequently held to be unconstitutional. *Id.* at 864. In words that still ring true today, the Court observed that "these things are incident to every sort of trial and are part of the social burden of living under government. They are not the irreparable damage as to which equity will interfere to prevent." *Id.* Just as the harms alleged in *Heller Brothers* did not suffice to justify issuing an injunction, the harms alleged here by the Tribe do not justify its attempt to short-circuit the NLRA's statutory review process.[10]

### III. The balance of the equities favors the NLRB.

In addition to its failure to demonstrate likelihood of success or irreparable harm, the Tribe also cannot meet the other criteria necessary for a preliminary injunction – that the balance of equities tips in the movant's favor and that the injunction is in the public interest. As set forth above, the balance of equities factor is intertwined with the public interest consideration because the Tribe has brought suit against government officials acting in their official capacities. *See Nken*, 556 U.S. at 435. The Supreme Court has emphasized that "courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter,* 555 U.S. at 24 (quoting *Weinberger v. Romero-Barcelo,* 456 U.S. 305, 312 (1982)). Here, a consideration of the overall public interest and the balance of equities overwhelmingly weighs against granting the Tribe's requested injunctive relief.

The NLRB was created and empowered by Congress to resolve questions of representation and to remedy unlawful labor practices which would otherwise interfere with

---

[10] In a different section of its memorandum, the Tribe claims that "application of the Act necessarily abrogates" the Tribe's treaty rights. (PI Mem. at 12). But the examples of purported abrogation the Tribe posits – i.e., "ordering the Tribe to cease and desist from following tribal law" and "requir[ing] the Tribe to allow an elected union into its reservation" – are not consequences that could possibly flow from the representation case. Rather, those things could only come about if the Board issued a final order so commanding the Tribe in a subsequent unfair labor practice case and a court of appeals enforced that order on review. *See Myers*, 303 U.S. at 48.

interstate commerce. *See* 29 U.S.C. §§ 151 & 160.[11] Congress has explicitly determined that delays in the representation process should be avoided because they "ultimately could frustrate employees' bargaining rights before the employees had an opportunity to exercise them." *Gold Coast Rest.,* 995 F.2d at 267 (citing *Boire*, 376 U.S. at 477-78); *see also Bishop v. NLRB,* 502 F.2d 1024, 1027 (5th Cir. 1974) ("The underlying purpose of the Act is to maintain industrial peace, and to allow employers and unions to rush into federal district court at will to prevent or nullify certification elections would encourage dilatory tactics by dissatisfied parties and lead to industrial unrest.") (internal citations omitted).[12] Indeed, as explained above, the indirect review of certifications was established because "Congress was concerned that the time required to process a direct appeal might cause the erosion of a union's support among bargaining unit employees." *Hartz Mountain*, 727 F.2d at 1311. Accordingly, issuance of an injunction—even a "targeted, limited, temporary" one (PI Mem. at 24)—would harm the public, the Union, and the Tribe's own Casino employees.

By contrast, the equities here do not favor the Tribe. First, it cannot show that it will suffer any cognizable harm if an injunction is denied because, as explained above, the statutory review scheme affords the Tribe with "an adequate opportunity to secure judicial protection against possible illegal action on the part of the Board." *Myers*, 303 U.S. at 48. Second, the Tribe's actions do not comport with principles of equity. As explained above, the Board has

---

[11] The Supreme Court has made clear that the primary congressional purpose of the NLRA is to protect the public interest. *See, e.g., U.A.W. Local 283 v. Scofield*, 382 U.S. 205, 220 (1965); *Vaca v. Sipes*, 386 U.S. 171, 182-83 n.8 (1967) ("The public interest in effectuating the polices of the federal labor laws, not the wrong done the individual employee, is always the Board's principal concern in fashioning unfair labor practice remedies.").

[12] The "exceptional need for expedition" in representation cases is the reason why such proceedings are exempt from even the minimal requirements of the Administrative Procedure Act. Senate Comm. on the Judiciary, comparative print on the revision of S.7, 79th Cong., 1st Sess. 7 (1945); *see* 5 U.S.C. § 554(a)(6).

sought to accommodate the interests of the Tribe. While Regional Director Morgan denied the Tribe's request for an indefinite postponement of the representation hearing,[13] she did grant the Tribe's alternative request for a nearly four-week delay to June 15, 2015, based on the Tribe's representation that it "c[ould] be prepared to move forward with this case on or after" that date. (Compl. Ex. N.) Yet, just one week before that hearing was scheduled to commence, the Tribe nonetheless filed this lawsuit and moved this Court for emergency injunctive relief, effectively forcing the NLRB to delay the hearing once again in order to adequately respond to the motion. Particularly in light of this Court's 2011 decision dismissing the Tribe's impermissible attempt to enjoin an administrative hearing for lack of subject-matter jurisdiction, *see Saginaw Chippewa Tribe of Michigan*, 838 F. Supp. 2d at 605, equity does not favor granting the Tribe emergency injunctive relief in these circumstances.

In short, an injunction would interfere with the Board's procedures and jurisdiction, contrary to congressional purposes. It would also harm the Union as well as the Tribe's own Casino employees in the attempted exercise of rights provided by the NLRA. By contrast, in the absence of an injunction, the Tribe faces only ordinary submission to the Board's representation process. In addition, the Tribe has acted inequitably. Therefore, the balance of equities favors the Board.

## CONCLUSION

The Sixth Circuit has "emphasize[d] that neither the National Labor Relations Act itself, nor any authoritative legislative history, nor *Leedom v. Kyne*, *supra*, nor any other Supreme Court decision, either commands or authorizes the delay inherent in District Court review of interlocutory orders of the Board or its agents." *Blue Cross & Blue Shield*, 609 F.2d at 244. To

---

[13] The Tribe did not request that the five-member Board review that denial. *See* 29 C.F.R. 102.67(c).

the contrary, long-settled precedent commands lower federal courts to scrupulously enforce the Act's exhaustion principles by dismissing preemptive actions like this for lack of subject-matter jurisdiction. Accordingly, the Tribe's attempt to interfere with the pending representation case by asking this Court for equitable relief in a case over which it lacks jurisdiction is both inappropriate and contrary to law. It follows that the Tribe's motions for injunctive relief should be denied.

Respectfully submitted,

s/ Nancy E. Kessler Platt
NANCY E. KESSLER PLATT
*Deputy Assistant General Counsel*
(202) 273-2937
Nancy.Platt@nlrb.gov

KEVIN P. FLANAGAN
*Supervisory Attorney*
(202) 273-2938
Kevin.Flanagan@nlrb.gov

SARAH POSNER
*Attorney*
(202) 273-2904
Sarah.Posner@nlrb.gov

National Labor Relations Board
*Contempt, Compliance, and*
 *Special Litigation Branch*
1099 14th Street, NW, Suite 10700
Washington, DC 20570

Date: June 25, 2015                                    Attorneys for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on June 25, 2015, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

**Jessica S. Intermill**
Hogen Adams PLLC
1935 W. County Rd. B2
Suite 460
St. Paul, MN 55113
651-842-9104
651-842-9101 (fax)
jintermill@hogenadams.com

**William A. Szotkowski**
Hogen Adams PLLC
1935 W. County Road B2
Suite 460
St. Paul, MN 55113
651-842-9100
651-842-9101 (fax)
bszotkowski@hogenadams.com

s/ Nancy E. Kessler Platt
NANCY E. KESSLER PLATT
*Deputy Assistant General Counsel*
(202) 273-2937
Nancy.Platt@nlrb.gov